IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
April 10, 2002 Session

**KEVIN SHAWN TAYLOR v. STATE OF TENNESSEE**

**Direct Appeal from the Circuit Court for Warren County**
**No. F-7978     Charles D. Haston, Judge**

———————————

**No. M2001-02203-CCA-R3-PC - Filed September 26, 2002**

———————————

The petitioner, Kevin Shawn Taylor, pled guilty in the Warren County Circuit Court to one count of attempted aggravated sexual battery. He received a sentence of ten years incarceration in the Tennessee Department of Correction. Subsequently, the petitioner filed for post-conviction relief, alleging that he received the ineffective assistance of counsel and that his guilty plea was not knowing or voluntary. After a hearing, the post-conviction court denied relief. On appeal, the petitioner contends that the post-conviction court erred in denying his petition. Upon review of the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOE G. RILEY and ALAN E. GLENN, JJ., joined.

Lisa Zavogiannis, McMinnville, Tennessee, for the appellant, Kevin Shawn Taylor.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General; Dale Potter, District Attorney General; and Tom Miner, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

### I.  Factual Background

On November 12, 1999, the Warren County Grand Jury indicted the petitioner on one count of rape of a child and one count of aggravated sexual battery. At the petitioner's arraignment, the Public Defender's office was appointed as counsel for the petitioner. As a result of plea negotiations, on March 24, 2000, the petitioner pled guilty to attempted aggravated sexual battery,

a Class C felony, and agreed to be sentenced as a Range II offender.[1] The trial court sentenced the petitioner to ten years incarceration.

Subsequently, the petitioner filed a petition for post-conviction relief, alleging that his counsel had been ineffective for failing to conduct a proper investigation, failing to conduct meetings with the petitioner that secured the attorney-client privilege, and failing to properly advise him of the correct release eligibility percentage.[2] He also contended that his plea was neither knowing nor voluntary because of the incorrect information he received from counsel.

Dan Bryant, the District Public Defender, testified at the post-conviction hearing. Bryant explained that there are only three attorneys in the Public Defender's office. Accordingly, the three attorneys generally work on their cases as a group instead of assigning one attorney to a case. As to his representation of the petitioner, Bryant specifically recalled speaking to the petitioner on two occasions in the Warren County Jail prior to the petitioner's guilty plea. Bryant admitted that he did not recall ever having a one-on-one conversation with the petitioner. Typically, the attorneys would meet with three or four prisoners at one time in the chapel of the jail. Bryant conceded that he had been at the jail when children toured the facilities, but could not recall if such a tour ever occurred while he spoke with the petitioner.

Bryant testified that the petitioner informed the attorneys about a possible defense. Bryant conceded that he did not interview anyone concerning that defense. He also conceded that the petitioner may have asked if, as a part of his sentence, he would be required to register as a sex offender. Bryant asserted that the attorneys informed the petitioner that he would not be required to serve one hundred percent (100%) or eighty-five percent (85%) of his sentence in confinement. Instead, the attorneys advised the petitioner that, as a Range II offender, he would be eligible for release after service of thirty-five percent (35%) of his sentence. Bryant attested that this release eligibility date was confirmed by "[o]ne of my assistants" who contacted the Tennessee Department of Correction.

Bryant averred that the petitioner did not complain about the manner in which the attorneys conducted their interviews. Bryant also maintained that "[h]ad we gone to trial in this matter, we would have investigated his story." He stated that the attorneys always explained potential punishments to their clients prior to a plea. Furthermore, Bryant "didn't note any confusion or indecision on [the petitioner's] part at the time that the plea was entered." Bryant also testified that, at the plea hearing, the petitioner informed the trial court that he knew his rights and that he was

_____

[1] Because the petitioner had only one prior felony conviction, he qualified as a Range I offender. Tenn. Code Ann. § 40-35-105 (1997). However, the petitioner pled guilty as a Range II offender. Tenn. Code Ann. § 40-35-106 (1997). The indictment charged the appellant with one count of rape of a child and one count of aggravated sexual battery. The plea agreement stated that the petitioner pled guilty to one count of attempted aggravated sexual battery.

[2] The petitioner's original petition for post-conviction relief was filed on September 20, 2000. On October 13, 2000, the post-conviction court appointed counsel to represent the petitioner. Thereafter, amended petitions for post-conviction relief were filed on February 9, 2001, and on June 15, 2001.

satisfied with the representation of counsel. Bryant confirmed that both he and the petitioner signed the plea documents and stated that he had discussed the plea agreement and waiver of rights form with the petitioner prior to the plea. Moreover, Bryant related that the District Attorney General had notified him that the plea to which the petitioner agreed was the "best deal" that the State would offer.

Robert W. Boyd, Jr., an Assistant Public Defender, testified that the attorneys met with the petitioner "multiple" times, but "less than a handful" of times, estimating three meetings. Boyd stated that the petitioner frequently wrote letters to the attorneys, explaining "background material that [the petitioner] felt was relevant to any defenses that he might have. Well, not just to the defense, but just sort of background, like family relationship and that sort of thing." Specifically, Boyd related that the petitioner "gave us some facts or ideas. Whether they were actually defenses is debatable." Boyd admitted that counsel did not independently investigate the petitioner's alleged defenses, but asserted that counsel probably questioned the petitioner about the information he related. Boyd opined that the defenses offered by the petitioner probably would not have "panned out."

Boyd confirmed that, several days prior to the plea, Scott Grissom, an Assistant Public Defender, called Faye Claude, an employee of the Tennessee Department of Correction, and verified the petitioner's release eligibility status. Boyd also indicated that the petitioner may have asked, on the morning of his plea, whether he would be registered as a sex offender.

Regarding the general procedures employed by the Public Defender's office, Boyd explained that the attorneys first filed for discovery. Upon obtaining the discovery, they provided copies of the discovery and the proposed plea agreement to the client. The attorneys then met with their clients in groups and provided copies of the information. At the meetings, the attorneys advised their clients to review the information because the attorneys would return in a few days to discuss the information. If clients had questions, they were advised that "we will try to meet with you individually." Boyd "vaguely" recalled children touring the jail, but could not remember if they did so during any of the meetings with the petitioner.

Boyd opined that one of the attorneys met with the petitioner prior to the plea to explain the elements of the charged offenses and the possible defenses. Boyd also stated that counsel explained to the petitioner that he would be pleading to an increased range but to a reduced charge. Boyd did not recall if the attorneys had received any discovery prior to the petitioner's plea. Boyd conceded that the attorneys would have stopped trial preparation upon the petitioner's agreement to the guilty plea.

Scott Grissom, the third Public Defender, testified that the attorneys met with the petitioner two or three times prior to the plea. Grissom "vaguely" remembered discussing the facts of the case with the petitioner. He admitted that the attorneys "didn't go out and interview witnesses or anything like that at that point in time." Grissom did not recall the petitioner asking if, as a result of his conviction, he would be registered as a sex offender or if he would be required to submit to

psychological testing. Grissom related that he called Faye Claude at the Tennessee Department of Correction "to verify that we were accurate that that was not going to be an eighty-five (85%) percent like the other, that the attempt statute was not in that same eighty-five (85%) percent range as the charge itself." Grissom could not recall if he related this information to the petitioner.

Finally, the petitioner testified in his own behalf. He contended that he had three short meetings with the attorneys, specifically complaining that, at a meeting in the chapel at the county jail, two inmates and three children were also present. The petitioner claimed that "I wrote [the attorneys] many letters on evidence and possible witnesses and stuff to my defense as to what they could do." He attested that he never received a response to those letters. The petitioner also alleged that counsel did not investigate his case. Additionally, the petitioner complained that he was not informed about a possible suppression hearing or the procedures for discovery. The petitioner maintained that he asked counsel if he would be required to register as a sex offender and submit to a psychological examination as a result of his plea. He also asked if he would be eligible for release after serving thirty-five percent (35%) of his sentence. The petitioner conceded that Boyd agreed to investigate the petitioner's release eligibility and admitted that counsel explained to the petitioner that he would be pleading outside his range.

The petitioner conceded that he was told that he had a thirty-five percent (35%) release eligibility date. However, he further alleged that "I have read law books that also states that I have [to] serve one hundred (100%) percent." The petitioner contended that he would have gone to trial if he had known the details of his plea. The petitioner informed the court that, while in jail prior to the plea, he learned through word-of-mouth that Tennessee has a sex offender registry and was aware that he might be required to register as part of his sentence. He also knew that, as part of his sentence, he could be required to undergo psychological evaluation. The petitioner acknowledged that a "TOMIS Offender Sentence Letter" he received from the Tennessee Department of Correction stated that the petitioner has a release eligibility of thirty-five percent (35%); however, the petitioner continued to insist that he will be required to serve one hundred percent (100%) of his sentence in confinement. The petitioner also admitted that, during the guilty plea hearing, he informed the court that he had no complaints with the representation of the attorneys. Moreover, the petitioner conceded that he had previously "entered a negotiated settlement" to other criminal charges.

At the conclusion of the hearing, after considering the foregoing proof, the trial court found that

> the attorneys did follow the standard of care required. I do not find any prejudice imposed upon him, or compulsion to enter a plea based upon his statement or that of the Public Defender's office. . . . I don't find [either of the Strickland prongs] in the proof, ladies and gentlemen. . . . [During the guilty plea hearing, the petitioner] assured me in questioning that he understood the nature of the crime and the elements of the crime with which he was charged. I asked counsel if they had advised him of the elements and defenses, and he indicated

-4-

that they had. Of course, furthermore, I asked whether or not he had any complaints about the way the case was handled, and of course that was his opportunity to say that he did, and he said that he did not have any complaints. Ladies and gentlemen, I just don't find anything in the record that I have heard today that would justify my setting aside his plea of guilty to attempted aggravated sexual battery and grant him another trial after we have gone through all that we have gone through to try to protect his rights and make sure that he had adequate representation.

The petitioner now appeals this ruling.

## II. Analysis

In order to obtain relief, the petitioner is obligated to prove all factual allegations contained in his post-conviction petition by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f) (1997). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998). Generally, the post-conviction court determines witness credibility and the weight and value to be accorded their testimony. Black v. State, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990). Accordingly, this court will confer the weight of a jury verdict upon the findings made by the post-conviction court at a hearing after observing witnesses testify and considering conflicting testimony. Bratton v. State, 477 S.W.2d 754, 756 (Tenn. Crim. App. 1971).

### A. Ineffective Assistance of Counsel

Regarding appellate review of claims of ineffective assistance of counsel, we note that a [post-conviction] court's *findings of fact* underlying a claim of ineffective assistance of counsel are reviewed on appeal under a *de novo* standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise. However, a [post-conviction] court's *conclusions of law*--such as whether counsel's performance was deficient or whether that deficiency was prejudicial--are reviewed under a purely *de novo* standard, with no presumption of correctness given to the [post-conviction] court's conclusions.

Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001) (citations omitted).

"The Sixth Amendment of the United States Constitution and Article 1, § 9 of the Tennessee Constitution both require that a defendant in a criminal case receive effective assistance of counsel." Lofton v. State, 898 S.W.2d 246, 248 (Tenn. Crim. App. 1994). To this end, "this Court applies the standards set forth in Strickland v. Washington, [466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)]. Petitioner must show that counsel's performance was deficient and that petitioner was prejudiced by this deficiency." Porterfield v. State, 897 S.W.2d 672, 678 (Tenn. 1995). Specifically,

the petitioner is not entitled to relief on post-conviction unless he demonstrates that there is a reasonable probability that but for counsel's deficient performance the result of his trial would have been different. Where, as in this case, the petitioner pleaded guilty, he is not entitled to relief on post-conviction unless he demonstrates "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."

Shazel v. State, 966 S.W.2d 414, 416 (Tenn. 1998) (quoting Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370-71 (1985)) (citations omitted). Furthermore,

[b]ecause a petitioner must establish both prongs of the test to prevail on a claim of ineffective assistance of counsel, failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim. Indeed, a court need not address the components in any particular order or even address both if the defendant makes an insufficient showing of one component.

Henley v. State, 960 S.W.2d 572, 580 (Tenn. 1997).

On appeal, the petitioner cites numerous examples in support of his claim that counsel were ineffective. First, the petitioner argues that counsel failed to ensure that the attorney-client privilege attached to conversations with the petitioner. He alleges that because third parties were always present in meetings between counsel and the petitioner, "[t]he nature of the meetings between [the petitioner] and his attorneys were such that the State could compel testimony, from [the petitioner's] attorneys and other parties present, at trial." However, at the post-conviction hearing, the petitioner did not testify to any additional facts that he would have revealed to the attorneys in "confidential" meetings, nor did he present any evidence that the attorney-client privilege was breached. Moreover, Boyd testified that clients were typically informed that individual meetings could be arranged. We agree with the petitioner that the procedures employed were less than ideal. However, the petitioner has failed to prove that he was prejudiced by these arrangements.

The petitioner also complains that counsel failed to properly investigate his case. However, the petitioner presented no proof at the post-conviction hearing regarding the purported evidence. Rather, the petitioner simply made vague assertions regarding the existence of such evidence. It is well-settled that

if a petitioner is able to establish that defense counsel was deficient in the investigation of the facts or calling a known witness, the petitioner is not entitled to relief from his conviction on this ground unless he can produce a material witness who (a) could have been found by a reasonable investigation and (b) would have testified favorably in support of his defense if called. Otherwise, the petitioner fails to establish the prejudice requirement mandated by [Strickland v. Washington].

Black, 794 S.W.2d at 757-58 (footnote omitted). "We cannot now speculate as to what, if any, information [witnesses] would have given to . . . counsel or whether that information would have been helpful to the [petitioner]." Wade v. State, 914 S.W.2d 97, 102 (Tenn. Crim. App. 1995). As we have previously noted, "[a]lthough the failure to investigate reasonably constitutes deficient performance, the [petitioner] must still prove that he or she was prejudiced by this deficiency." State v. Billy Kenneth Hall, No. E1999-02146-CCA-R3-CD, 2000 Tenn. Crim. App. LEXIS 857, at *37 (Knoxville, Nov. 1, 2000), perm. to appeal denied, (Tenn. 2001). In the instant case, based upon the proof presented at the post-conviction hearing, we are unable to conclude that the petitioner was prejudiced by counsel's failure to investigate.[3]

As his third complaint regarding the ineffective assistance of counsel, the petitioner argues that his counsel misrepresented the percentage of his sentence that he would be required to serve in confinement. Specifically, the petitioner contends that he pled guilty as a Range II offender with release eligibility after service of thirty-five percent (35%) of his sentence; however, he claims that he is being required by the Tennessee Department of Correction to serve one hundred percent (100%) of his ten-year sentence in confinement with no possibility of parole.

Release eligibility is governed primarily by Tennessee Code Annotated section 40-35-501 (1997), which provides that the "[r]elease eligibility for each defendant sentenced as a Range II multiple offender shall occur after service of thirty-five percent (35%) of the actual sentence imposed less sentence credits earned and retained by the defendant." Tenn. Code Ann. § 40-35-501 (d). However, for certain offenses enumerated in Tennessee Code Annotated section 40-35-501(i)(2), there shall be no release eligibility. Id. at (i)(1). Thus, for the specifically named offenses, such defendant must serve one hundred percent (100%) of the sentence in confinement, allowing a maximum reduction of fifteen percent (15%) in sentence credits. Id. One of the enumerated offenses is aggravated sexual battery. Id. at (i)(2)(H). In the instant case, although the petitioner was charged with aggravated sexual battery, he pled guilty to attempted aggravated sexual battery. See Tenn. Code Ann. § 39-12-101 (1997) and § 39-13-504 (1997). Notably, attempted aggravated sexual battery is not among the enumerated offenses. Generally, our courts glean "a statute's purpose from the plain and ordinary meaning of its language 'without forced or subtle construction that would limit or extend the meaning of the language.'" State v. Owens, 20 S.W.3d 634, 640 (Tenn. 2000) (quoting Carson Creek Vacation Resorts, Inc. v. State Dep't of Revenue, 865 S.W.2d 1, 2 (Tenn. 1993)) (footnote omitted). Therefore, the petitioner does not fall under the auspices of Tennessee Code Annotated section 40-35-501(i). State v. Calvin Otis Tankesly, No. M2000-00135-CCA-R3-PC, 2000 Tenn. Crim. App. LEXIS 458, at *4 (Nashville, June 9, 2000).

Nevertheless, the petitioner is concerned that he will be classified as a "child rapist," and thus could "be required to serve the entire sentence imposed by the court undiminished by any

---

[3] We emphasize that "a client's expressed intention to plead guilty does not relieve counsel of their duty to investigate possible defenses and to advise the defendant so that he can make an informed decision." Savino v. Murray, 82 F.3d 593, 599 (4th Cir. 1996). Accordingly, this court's opinion should in no way be interpreted as an approval of counsel's failure to investigate the petitioner's case.

sentence reduction credits." Tenn. Code Ann. § 39-13-523(b) (1997). However, Tennessee Code Annotated section 39-13-523(a)(1) clearly provides that "'[c]hild rapist' means a person convicted one (1) or more times of rape of a child." Again, we note that the petitioner pled guilty to attempted aggravated sexual battery and, accordingly, is not considered to be a child rapist under Tennessee Code Annotated section 39-15-523. Tankesly, No. M2000-00135-CCA-R3-PC, 2000 Tenn. Crim. App. LEXIS 458, at *4. Moreover, in a "TOMIS Offender Sentence Letter" sent to the petitioner, the Tennessee Department of Correction acknowledged that the petitioner is eligible for release after serving thirty-five percent (35%). Specifically, the letter notes a proposed release eligibility date of November 6, 2002. Accordingly, this issue is without merit.

### B. Guilty Pleas

Finally, the petitioner contends that if he had known he would be required to register as a known sex offender, submit to a psychological evaluation, and serve one hundred percent of his sentence, he would not have pled guilty and would have insisted upon going to trial. The petitioner's testimony indicates that, prior to the plea, he asked counsel about the sex offender registry and also inquired about the psychological evaluation. Specifically, at the post-conviction hearing, the following colloquy occurred on direct examination:

> Petitioner: I asked [the attorneys] if I would have to be registered as a sex offender if I took the plea. I asked them if I would have to go to a psychological evaluation, and would I be released at my thirty-five (35%) percent.
>
> Counsel: What was their answers?
>
> Petitioner: Robert Boyd told me that he would check with the [Tennessee Department of Correction] to see if that was what the facts was on that and he would let me know the next day.

Furthermore, the petitioner's testimony at the post-conviction hearing established that, also prior to the plea, he was aware of the possibility that he would be required to register as a sex offender and submit to a psychological evaluation. Additionally, the petitioner conceded that he told the court at the guilty plea hearing that his attorneys had explained the pending charges to him and that he did not have any complaints with the representation of counsel. Moreover, as we earlier noted, counsel did not err in advising the petitioner concerning his release eligibility date. This issue is likewise without merit.

### III. Conclusion

Based upon the foregoing, we affirm the judgment of the post-conviction court.

_____
NORMA McGEE OGLE, JUDGE